**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICTOF NEW YORK**

---

SCHLAM STONE & DOLAN LLP,

*Plaintiff*,

-against-

TRG GLOBAL CORPORATION,

*Defendant*.

23-CV_____

 **COMPLAINT**

---

*Pro se* Plaintiff Schlam Stone & Dolan LLP ("Schlam Stone"), for its Complaint against

Defendant TRG Global Corporation ("TRG") alleges as follows:

### NATURE OF ACTION

1.      This is a collection action by a law firm against its former client to recover fees

invoiced to the client in accordance with the terms of the parties' written retainer agreement,

dated September 7, 2022 (the "Retainer Agreement"), attached as Exhibit 1.  The fees are long

due and owing, but after approving the work, not disputing the bills as required by the retainer

letter and New York law to avoid an account stated, and making the retainer payment and a

subsequent payment, the former client now refuses to pay the outstanding amounts invoiced.

2.      The former client is TRG, which is a consulting group that advises its private

clients in connection with negotiating and performing contracts with the federal government.

Donna Roberson is TRG's Chairperson and upon information and belief its sole officer, director

and shareholder.  At all relevant times, Schlam Stone dealt only with Roberson and at all relevant

times she acted as if TRG was a sole proprietorship—that is a corporate entity in name only.

3.      Schlam Stone commenced a collections action on behalf of TRG against a former

TRG client, CodeMantra, in the Eastern District of Virginia on October 27, 2022.  Roberson's

1

conduct throughout the litigation made the representation extraordinary and unreasonable difficult to the extent that not only Schlam Stone but also Nixon Peabody, the counsel for CodeMantra, and Stephen Charnoff, Esq., Schlam Stone's local counsel, wondered whether Roberson was rational or even had legal capacity which necessitated at least two settlement allocutions before a federal magistrate judge in Virginia.  Among other things, Roberson refused to comply with the most fundamental obligations of discovery, despite repeated admonitions from counsel; left her deposition and refused to return, despite instructions of her counsel to do so, necessitating a motion to compel and for sanctions; and when she did testify, her testimony included blatant falsehoods about Schlam Stone, such as when she falsely claimed during her deposition that she had never seen the complaint before it was filed—a statement she refused to retract even when later shown e-mail correspondence from around the time the complaint was filed that confirmed she had reviewed and edited the complaint.  In other words, Roberson used the deposition to spin fantasies to attack the very counsel who was representing her and defending her at the deposition.

4.     Roberson further sent numerous e-mails with irrational demands, lies about the conduct of her counsel (much of which appeared designed to gas-light and "paper" her false allegations), and threats to file a disciplinary grievance against most of her attorneys.  When shown emails or other evidence that contradicted her statements, Roberson concocted nonsensical explanations and excuses, including claiming that e-mails between herself and her counsel had been fabricated and that she would not accept any e-mail as genuine without seeing the e-mail's "headers."

5.     At all times Roberson was the person with whom Schlam Stone dealt on behalf of TRG.  Schlam Stone duly invoiced TRG—by text and e-mail to Roberson—on a regular basis.

And Roberson, as the agent for TRG, never objected in writing to any item on any of the outstanding invoices—as required by the Retainer Agreement, which provided that an account stated would be created for any invoices not objected to in writing within 30 days.  As irrationally as Roberson often acted, to our knowledge she has never been adjudicated as lacking legal capacity, and therefore Roberson had the legal ability to enter into the Retainer Agreement and comply with the client obligations thereunder, but specifically refused to comply with the two most important obligations—to abide by her counsel's advice as to her legal obligations as a litigant in a federal civil action (that is to abide by the Federal Rules of Civil Procedure, the Local rules of the Eastern District of Virginia ("EDVA"), and the Court's Orders) and to make the payments required under the Retainer Agreement.  Thus, an account has been stated for the full amount invoiced by Schlam Stone to TRG, which remains outstanding.

6.      TRG owes Schlam Stone & Dolan a total of at least $128,090.96.23 (as of August 31, 2023) in past-due fees (including $5,215.99 that Schlam Stone paid for local counsel fees at Roberson's demand (Ex. 2), because Roberson refused to do so, and not including the 9% interest rate that continues to accrue on balances unpaid for more than 30 days, as provided in the Retainer Agreement.

7.      Further, Schlam Stone is entitled to judgment on its claims and the fees and costs it has incurred in prosecuting this action, as provided for in the Retainer Agreement.

### **THE PARTIES**

8.      Plaintiff Schlam Stone & Dolan LLP is a limited liability partnership, organized and existing under the laws of the State of New York.  Schlam Stone is engaged in the practice of law and maintains its place of business at 26 Broadway, New York, New York 10004.  All of its partners are citizens of New York or New Jersey and none of the partners are citizens of Florida.

9.      Defendant TRG is a Florida corporation with its principal place of business in Florida.

## JURISDICTION AND VENUE

10.      This Court has personal jurisdiction over TRG under C.P.L.R. § 302(a)(1), because it transacted business within this state and the claims in this lawsuit arise from that business—to wit it engaged Schlam Stone in New York, directed all of its communications to Schlam Stone in New York in furtherance of that engagement, and as directed by TRG (even though Schlam Stone was forced, under the Rules of Professional Responsibility to ignore Roberson's irrational directives in violation of the applicable law, the FRCP and court orders), Schlam Stone performed virtually all of its litigation tasks in New York, from where it sent its invoices and where it expected to be paid.

11.      Federal subject matter jurisdiction exists under 28 USC 1332, because there is complete diversity between the parties and the amount in controversy, exclusive of interest and attorneys' fees, exceeds $75,000.

12.      Venue in this District is proper under 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in New York, where Schlam Stone performed its legal services and where it expected to be paid. Specifically, most of the firm's interactions with the Defendant occurred from its offices in Manhattan, the Retainer Agreement was negotiated and prepared in Manhattan, much of the work reflected on the bills was done here, the bills were prepared and sent from New York, and any payments made to the firm were received or were supposed to be received in Manhattan.

## FACTUAL BACKGROUND

### A. TRG Retains Schlam Stone to Represent It

13.     In September 2022, Roberson retained Schlam Stone to represent TRG in litigation with CodeMantra.

14.     At all times, Schlam Stone dealt solely with Roberson—who represented to the firm that she had the authority to act on behalf of TRG.

15.     Thus, the terms of our retention were negotiated with Roberson on behalf of TRG. And at all times during the representation, Schlam Stone took directions solely from Roberson.

16.     The attorney in charge of the representation was Jeffrey M. Eilender, co-managing partner of the firm, and an attorney with over thirty years of experience.  Paul S. Stretton, was the initial associate at the firm but Roberson irrationally took an instant dislike to Mr. Stretton and demanded that he be replaced with the result that Channing Turner, of counsel, and an attorney with ten years of experience then worked on the matter, and soon he too was the subject of Roberson's misrepresentations about him and meritless threats to file a disciplinary charges against him.  Both Mr. Stretton and Mr. Turner were disturbed by Roberson's lies about their work and, in Mr. Turner's case, threats to bring charges that could jeopardize his license. That the case was ultimately settled is a testament to their fortitude and loyalty to the most difficult of clients.

17.     At Roberson's insistence, from the inception of the representations, the firm heavily discounted its rates on all the matters.  Thus, under the Retainer Agreement, Mr. Eilender and the other partners charged a discounted rate of $500 per hour (their regular rates range from $695 to $925), of counsel were charged at $400 (normally charged at $675), associates were charged at $350 (normally charged at $645), and paralegals were charged at $195 (normally charged at $235).

18.     TRG paid an initial retainer of $12,500 on or about September 12, 2022.

19.     Although the amount in dispute here was far smaller than a case Schlam Stone would normally agree to take, it agreed to represent TRG as an accommodation for another of its clients who knew Roberson.

**B.     Schlam Stone Prepares, and TRG Agrees to, the Retainer Agreement**

20.     After a period of negotiation, and based on Roberson's requests for discounts and other accommodations, the firm prepared a Retainer Agreement, dated September 7, 2022, with respect to the Code Mantra lawsuit.  The Retainer Agreement is attached as Exhibit 1.

21.     The Retainer Agreement was sent to TRG for Roberson to sign on September 7, 2022, as revised per Roberson's comments.

22.     Roberson, on behalf of TRG received the Retainer Agreement.

23.     TRG returned the letter to Schlam Stone on September 8, 2022, with the Subject "Signed" although Roberson had (likely as a mistake) not, in fact, attached a signed Retainer Agreement.  A copy of that e-mail is attached hereto as Exhibit 3.  Thus, TRG is bound by the Retainer Agreement because Roberson, on its behalf, evinced an intent to be bound by it based on sending it back and saying there was the signed copy, even though she appears to have inadvertently not signed it.

24.     As noted above, TRG sent Schlam Stone the $12,500 retainer amount required by the retainer letter on or about September 12, 2022 and at all times acted as if the Retainer Agreement was in force.

25.     Thus, although the TRG did not sign the Retainer Agreement, at all times during the course of the representation (until it stopped paying), TRG (acting through Roberson) acted in accordance with the terms of the Retainer Agreement, made timely payments in accordance with the Retainer Agreement, and accepted the benefits of the Retainer Agreement, *i.e.*, Schlam

Stone's representation of TRG.  Thus, TRG's objective actions all supported the conclusion that

it accepted and agreed to be bound by the terms of the Retainer Agreement.  At no time prior to

the settlement being agreed to did TRG ever tell Schlam Stone to stop working for it, nor did it

reject any work that Schlam Stone did on its behalf on the ground that it was unauthorized.

Thus, TRG is bound by the Retainer Agreement.

26.     The Retainer Agreement provided in pertinent part:

Each month we will provide TRG (by email to droberson@trg.global) with a
detailed statement of our fees, services rendered, and disbursements and other
charges. If there is any item on one of our monthly statements that you do not
understand or with which you disagree, please discuss it with us promptly so that
such questions can be resolved quickly. If TRG does not assert a specific, written
objection within 30 days of the date of a given statement, that statement will be
deemed acceptable to you as rendered. Our statements are payable in full within
30 days of receipt; charges that are unpaid after 30 days will incur a 9% annual
interest rate.

Ex. 1 at 2.

27.     As set forth below, at no time did TRG submit any specific, written objections to

any of the outstanding invoices being sued upon in this case.

28.     The Retainer Agreement further provided that:

Please be advised that, in certain circumstances, [TRG] has the right to arbitration
of fee disputes under the New York State Fee Dispute Resolution Program, as set
forth in Part 137 of the Rules of the Chief Administrator. The Dispute Resolution
Program does not apply in all circumstances. For example, it does not include
claims involving substantial legal questions or amounts of less than $1,000 or
more than $50,000.

Id. at 3.

29.     Because Schlam Stone is suing for more than $50,000, the right to arbitration

does not apply here.

30.     The Retainer Agreement also provided:

In the event we are required to use collection efforts to collect any unpaid portions
of our invoices, TRG agrees that the prevailing party will obtain its reasonable

fees and costs in any such collection action, as well as its reasonable fees and
costs in litigating any dispute over the amount of fees and expenses to be awarded
as part of this fee shifting (i.e., fees on fees), and that to the extent we appear pro
se, we will be able to collect the value of the time we expended as measured by
our hourly rates then in effect in litigating any such collection action.

*Id.* at 3-4.

31.     Thus, the Retainer Agreement provided for Schlam Stone to collect for the time

and expenses that it incurs as a *pro se* Plaintiff.

**C.    Roberson Acts Irrationally and Abusively**

32.     To say the least, Roberson was an extremely difficult client.

33.     Because the agreement with CodeMantra provided for jurisdiction in Virginia,

with the enthusiastic assent of Roberson, Schlam Stone filed the lawsuit in the Eastern District of

Virginia ("EDVA"), known for its "rocket docket."  This meant that that there would only be

about three months for discovery and trial would be at the end of May 2023, less than six months

after the lawsuit was filed.  Because at first Roberson appeared to act normally, Schlam Stone

believed that the accelerated nature of the EDVA proceedings would work to its client's

advantage by putting pressure on the defendant. As soon as discovery began, however,

Roberson's behavior changed—dramatically deteriorated in fact—and the accelerated calendar

actually worked against TRG because Roberson would not allow Schlam Stone to comply with

the most fundamental discovery obligations in perhaps the most unforgiving venue in the U.S.  A

venue where judges would give the briefest extensions and often no extensions at all.

34.     As discovery began, Roberson refused to cooperate with Schlam Stone in

responding to discovery requests, greatly increasing the amount of time that counsel spent on this

matter.  For example, Roberson refused to grant Schlam Stone access to her documents or to

provide documents in a format acceptable for production.  Likewise, Roberson refused to verify

her interrogatory responses for weeks and made Schlam Stone engage in repeated, time-

consuming revisions to what should have been straightforward responses, causing Schlam Stone to have to ask for extensions and then ultimately missing the deadlines. Citing these and other discovery deficiencies caused by Roberson, defense counsel threatened to seek the intervention of the court, causing Schlam Stone to spend additional time amending and updating discovery responses.

35.     It was during the document and interrogatory phase of discovery that Roberson expressed a visceral but unjustified dislike for Mr. Stretton, an alumnus of Sullivan & Cromwell. In truth, she did not like him because he told her things that she did not want to hear and in particular strongly advised her to get him documents and to sign off on the interrogatory responses. Ultimately, she not only refused to work with Mr. Stretton but baselessly attacked his competency.  Mr. Stretton is a highly-able and highly regarded associate who was about three years out of law school at the time.  This was a small and simple case and one appropriate for a junior associate to manage day to day on his own with supervision from Mr. Eilender..

36.     Mr. Stretton was replaced with Mr. Turner, a litigator trained at the University of Chicago Law School (who was on its law review) and an alumnus of Wilmer Cutler Pickering Hale and Dorr, with 10 years of litigation experience.  Even though he was more senior than Mr. Stretton, soon Mr. Turner was also understandably very uncomfortable with the abuse to which he was subjected by Roberson that included lies about his conduct and baseless threats to file a grievance charge against him.

37.     Roberson's irrationality continued during her remote deposition.  At a deposition scheduled on April 24, 2023, Roberson's behavior caused opposing counsel to halt the deposition and seek sanctions against Roberson for improperly impeding, delaying, and frustrating the deposition.  A copy of the deposition transcript is attached hereto as Exhibit 4.

During the deposition, when shown a copy of the complaint that she had edited and approved for filing, Roberson falsely claimed that she had never seen the complaint before and that it was filed without her permission.  She irrationally refused to answer the most basic questions.

38.    Roberson's insistence on taking a remote deposition, not in-person, caused further difficulties.  Technical difficulties plagued the remote deposition because—contrary to Schlam Stone's express instructions—Roberson had neither arranged for an appropriate location with reliable internet access and IT support nor tested her connection before her deposition.  Roberson refused to follow directions from her counsel during efforts to remedy these technical difficulties.  And when Nixon Peabody eventually paused the deposition to discuss remedying the problems or rescheduling the deposition, Roberson logged off of the Zoom session and refused to return—even after instructed to return repeatedly by her own counsel.

39.    Because of her conduct, Nixon Peabody moved to compel her deposition and for sanctions—a motion Schlam Stone vigorously opposed on Roberson's behalf despite her objectively unreasonable behavior and increasing hostility.  Roberson and Schlam Stone had to resume the deposition on another date, further increasing the cost to litigate the case. Indeed, Schlam Stone so did not trust how she would act, that the deposition was scheduled to occur in person and Mr. Turner traveled down to Virginia to sit next to her, increasing the fees and expenses.

40.    Were this case in New York, Schlam Stone would have withdrawn as the relationship between counsel and client had irretrievably broken down because of her irrationality and hostility.  However, because the trial date was less than a month away from when the deposition occurred (and re-occurred), Schlam Stone's local counsel strongly advised that the Virginia federal court would not permit the firm to withdraw and that the breakdown in

the relationship with the client was not a basis for withdrawal under Virgina rule this close to the trial date.

41.     Luckily, Magistrate Judge Willaim Fitzpatrick got a sense of Roberson's behavior and insisted on an in-person settlement conference which resulted in a binding settlement term sheet. Despite having both her counsel and Magistrate Judge Fitzpatrick explain the term sheet to her, and having agreed to and signed it, Roberson later disavowed the settlement and threatened to grieve Mr. Turner for supposedly forcing her to agree to it.  Among other things, she refused to sign a release even though the settlement agreement required the mutual exchange of general releases.

42.     At this point, Schlam Stone and local counsel did move to withdraw but, as local counsel predicted, the motions were denied.

43.     Magistrate Judge Fitzpatrick then held another in-person conference, in which he ruled that Roberson had understood and agreed to the settlement and now needed to provide a signed release by a certain date or she would be sanctioned.  Ultimately, Roberson complied.

44.     Notably, Magistrate Judge Fitzpatrick also made extensive comments on the record that TRG had been ably represented by its attorneys. Ex. 5 at 8.

45.     Unfortunately, Schlam Stone's bills were high relative to the amount in controversy and to the ultimate settlement because each task took five if not ten times longer than it should have as Roberson would either not cooperate at all or would pretend not to remember what she had been told to do or would repeatedly contradict herself and the instructions that she gave the firm's attorneys.

46.     At the end of the day, as recognized on the record by the Magistrate Judge, Schlam Stone did the best it could with a difficult set of facts and an irrational, self-sabotaging client and achieved the best result possible.

47.     Throughout the representation, Roberson baselessly attacked the intelligence, integrity, and competence of her attorneys.  Contrary to Roberson's claims, her attorneys provided excellent and highly professional representation. Indeed, even opposing counsel recognized that Roberson, not her attorneys, were the problem, writing: "Unlike your client, [Schlam Stone & Dolan LLP and Rees Broome, PC] have each been very professional throughout this case." TRG Global Corp. v. CodeMantra U.S. LLC, Case No. 1:22-cv-01219, Dkt 42-1 at 7.

**D.     TRG Fails To Fully Pay Schlam Stone's Invoices**

**48.**     Beyond the $12,500 retainer payment, and a payment of $4,690.50 on or about April 11, 2023, TRG never paid any of Schlam Stone's invoices. An example of her craziness was her repeated claims that she had paid more when she did not—when all documentary evidence showed that she did not.  Exhibit 6.

49.     Schlam Stone's invoices from September 2022 through March 10, 2023, totaled $17,190.50.

50.     But after April 11, 2023, TRG stopped paying and has not paid any invoices since then.

51.     On June 1, 2023, Schlam Stone asserted a charging lien against TRG.

**E.     TRG Does Not Object in Writing to Schlam Stone's Invoices, and an Account for the Amounts Due Under These Invoices Is Stated**

52.     **Invoice No. 62303**, dated April 11, 2023 details services rendered by Schlam Stone during the month of March 2023.  This invoice was e-mailed to Roberson at

droberson@trg.global on April 12, 2023.  A copy of the invoice is attached as Exhibit 7  The amount of the invoice is $23,324,63.

53.     Detailed descriptions of the services provided and the actual, reasonable value of each are set forth in the Invoice, which are expressly incorporated herein and made a part of this paragraph.  *See* Ex. 8.

54.     TRG did not object to this Invoice.

55.     **Invoice No. 62691**, dated May 8, 2023, details services rendered by Schlam Stone during the month of April 2023.  This invoice was e-mailed to Roberson at droberson@trg.global on May 8, 2023.   A copy of the invoice is attached as Exhibit 8.  The amount of the invoice is $61,626.32 ($38,301.69 for time spent and disbursements in April, plus the $23,324.63 due and owing from Invoice No. 62303).

56.     Detailed descriptions of the services provided and the actual, reasonable value of each are set forth in the Invoice, which are expressly incorporated herein and made a part of this paragraph.  *See* Ex. 9.

57.     Roberson did not object to this Invoice.

58.     **Invoice No. 62776**, dated June 1, 2023, details services rendered by Schlam Stone during the month of May 2023.  This invoice was e-mailed to Roberson at droberson@trg.global on June 1, 2023.  A copy of the invoice is attached as Exhibit 9.  The amount of the invoice is $119,673.21 ($58,046.89 for time spent and disbursements during May 2023, and $61,626.32 due and owing from the prior two invoices).

59.     Detailed descriptions of the services provided and the actual, reasonable value of each are set forth in the Invoice, which are expressly incorporated herein and made a part of this paragraph.  *See* Ex. 9.

60.     Roberson did not raise a specific objection to anything on the invoice, but merely asserted that the invoice was incorrect in that it did not include unspecified payments to or credits given by Schlam Stone.

61.      The invoice correctly reflected all payments by TRG.  Schlam Stone gave no credits to TRG at any time.

62.     **Invoice No. 63326**, dated July 12, 2023, details services rendered by Schlam Stone during the month of June 2023.  This invoice was e-mailed to Roberson at droberson@trg.global on pr about that date.  A copy of the invoice is attached as Exhibit 10.  The amount of the invoice is $127,907.99 ($8,234.78 for work and disbursements during June, including $5,215.99 paid to local counsel at the demand of Roberson) and $119,673.21 due and owing from the prior invoices).

63.     Detailed descriptions of the services provided and the actual, reasonable value of each are set forth in the Invoice, which are expressly incorporated herein and made a part of this paragraph.  *See* Ex. 10.

64.     Roberson did not raise a specific objection to anything on the invoice.

65.     **Invoice No. 63767**, dated August 10, 2023, details services rendered by Schlam Stone during the month of July 2023.  This invoice was e-mailed to Roberson at droberson@trg.global on or about that date.  A copy of the invoice is attached as Exhibit 11.  The amount of the invoice is for $128,080.96 ($153.47 for work and disbursements during July and $127,907.99 due and owing from the prior invoices).

66.     Detailed descriptions of the services provided and the actual, reasonable value of each are set forth in the Invoice, which are expressly incorporated herein and made a part of this paragraph.  *See* Ex. 11.

14

67.     Roberson did not raise a specific objection to anything on the invoice.

68.     Under the Retainer Agreement, invoices past due more than 30 days incurred 9% simple interest.  Attached as Exhibit 12 is a chart calculating the interest due on each of the unpaid invoices.  As of September 1, 2023, TRG owes Schlam Stone $130,333.13 in unpaid fees, with interest.

69.     The Retainer Letter also provides for fee shifting to the prevailing party, and thus Schlam Stone is also entitled to the value of its time (as reflected by its regular rates in 2023 and for whatever later years this case lasts) and any disbursements in prosecuting this action, as well as in asserting or defending its retaining lien—which it has asserted to secure payment.

**F.     Part 137 of the Rules of the Chief Administrative Judge Does Not Apply Here**

70.     As alleged above, the Retainer Letter specifically set forth the clients' rights to arbitration under the New York State Fee Dispute Resolution Program. Ex. 1 at 3.

71.     Under 22 N.Y.C.R.R. Part 137.1(b)(ii), Part 137 does not apply here, since the amount in dispute is greater than $50,000 and Schlam Stone does not consent to arbitrate the dispute.

**FIRST CAUSE OF ACTION**
**(Account Stated)**

72.     Schlam Stone repeats the allegations above as if fully set forth here.

73.     Under the terms of the Retainer Agreement, TRG required to make a specific, written objection on a timely basis (specifically, within 30 days) to each invoice to avoid an account stated being created.

74.     TRG did not do so for any of the invoices described above.

75.     Accordingly, an account stated has been established with respect to the invoices itemized above that were issued in accordance with the Retainer Agreement and that were

directed to and received by TRG as a client to the firm, and to which no valid objections were ever made.

76.     Moreover, even completely apart from the specific provisions of the Retainer Agreement, an account stated has been established as a matter of common law, because TRG received the invoices itemized above on a regular basis on, to which no specific and timely objections were made.  As a result, an account stated has been established on all these invoices.

77.     TRG is thus liable for the amount of $128,080.96, together with 9% *per annum* simple interest up to the date of judgment, plus post-judgment interest, and costs.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

78.     Schlam Stone repeats the allegations above as if fully set forth here.

79.     The Retainer Agreement is a valid and binding contract between Schlam Stone and TRG.  And even though TRG did not sign the Retainer Agreement, at all times during the course of the representation (until it stopped paying), TRG acted in accordance with the terms of the Retainer Agreement, made timely payments in accordance with the Retainer Agreement, and accepted the benefits of the Retainer Agreement, *i.e.*, Schlam Stone's representation of TRG. Thus, TRG's objective actions all supported the conclusion that it accepted and agreed to be bound by the terms of the Retainer Agreement.

80.     The mutual exchange of promises in the Retainer Agreement was sufficient consideration.

81.     Under the Retainer Agreement, Schlam Stone was to provide legal services to TRG, and the parties agreed on the rates for those services.

82.     Schlam Stone provided those services to TRG, and has fully performed all of its material obligations under the Retainer Agreement.

83.     The Retainer Agreement provided that the prevailing party would be awarded its attorneys' fees and costs and that if Schlam Stone preceded on a *pro se* basis, it would be awarded its fees as measured by its prevailing rates during the time period that this lawsuit pended.

84.     As a result, TRG is liable for Schlam Stone's fees (as measured by the time it has spent, and does spend, on this case multiplied by its hourly rates) and its disbursements incurred in this action, plus pre- and post-judgment interest.

**WHEREFORE**, Plaintiff *pro se* Schlam Stone respectfully requests that judgment be entered be entered in its favor, against TRG for $128,080.96, plus pre- and post-judgment interest, plus attorneys' fees and costs incurred in this action, and such other and further relief as this Court deems just and proper.

Dated: New York, New York
       September 5, 2023

                              **SCHLAM STONE & DOLAN LLP**

                              By: /s/ Jeffrey M. Eilender
                                  Jeffrey M. Eilender
                                  Samuel L. Butt
                                  26 Broadway
                                  New York, New York 10004
                                  Tel.: (212) 344-5400
                                  Fax: (212) 344-7677
                                  E-Mail: jeilender@schlamstone.com
                                  E-Mail: sbutt@schlamstone.com
                                  Pro se *Plaintiff*